UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AMANDA ROSE HONEYCUTT, | Case No. 1:18-cv-762 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Amanda Rose Honeycutt filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In April 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and a protective application for Supplemental Security Income ("SSI"), alleging disability beginning two years earlier on April 30, 2013, based upon a combination of mental impairments including depression, severe anxiety disorder, obsessive compulsive disorder ("OCD"), and posttraumatic stress disorder (PTSD"), as well as some physical issues including chronic fatigue. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

1

On October 30, 2017, Plaintiff appeared with counsel and gave testimony before ALJ Peter Jamison; a vocational expert also testified. (Tr. 39-75). Plaintiff was 37 years old at the time of her hearing. She was considered a younger individual both on the date of her alleged disability as well as on December 31, 2017, her date last insured ("DLI") for purposes of DIB.[1] Plaintiff completed a Bachelor's Degree in English, and has a varied work history ranging from unskilled work as a concession worker to highly skilled work as a writer and editor.

On February 22, 2018 the ALJ issued an adverse written decision, concluding that even though Plaintiff is unable to perform any of her past relevant work, she is not disabled. (Tr. 15-38). The ALJ determined that Plaintiff has severe impairments of affective disorder (depression), anxiety disorder, OCD, PTSD, and respiratory system disorder (sleep apnea). (Tr. 17). Plaintiff does not presently dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 18).

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of medium work, subject to the following limitations:

> [S]he could never be exposed to extreme heat; could never be exposed to humid or wet conditions; would need to avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; could operate a motor vehicle occasionally, could interact with supervisors occasionally, could interact with coworkers occasionally, could have no interaction with the public; and could tolerate no more than ordinary routine changes in work setting and duties.

(Tr. 15). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant

---

[1] In order to be entitled to DIB, Plaintiff must prove she became disabled on or before her DLI.

2

number" of jobs in the national economy, including the representative jobs of industrial cleaner, kitchen helper, dishwasher, or hand packager. (Tr. 29-30). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that: (1) substantial evidence does not exist to support the ALJ's decision; and (2) the ALJ improperly weighed the opinion evidence.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

### B. Plaintiff's Claims

### 1. Substantial Evidence Supports the ALJ's Decision

Plaintiff first argues that the ALJ's decision should be reversed based upon a lack of substantial evidence to support the non-disability determination. The undersigned finds no error, and instead find substantial evidence to support the ALJ's decision.

Plaintiff's records reflect that she sought Emergency Room treatment for her first panic attack in June 2013 but did not suffer additional panic attacks until June 2014, at which time she was prescribed Zoloft by her primary care physician. (Tr. 21). On September 23, 2014, she began treating with a psychologist, Sarah Mills, Psy.D. Soon after filing her application for benefits, in August 2015, Plaintiff was referred by the agency for a psychological consulting examination. (Tr. 1035-1039). At the time of her evaluation with Dr. Sexton, Plaintiff's symptoms waxed and waned but he determined that overall her symptoms were only in the "mild" range.

Plaintiff is critical of the ALJ's discussion of records that either directly report or suggest improvement in her mental health symptoms with medication management and outpatient therapy between 2014 and 2017, with decreasing depressive symptoms and panic attacks. (*See, e.g.,* Tr. 21-26 (ALJ's discussion of records) and specific records at Tr. 375, 516, 835, 1059, 1116-1117, 1121, 1135, 1149, 1150, 1156-57, 1160-61, 1166, 1178, 1185, 1399, 1408). Plaintiff concedes that the cited records support "some improvement in symptomology." (Doc. 11 at 9). However, she argues that "equal if not more" records reflect "her inability to manage her activities of daily living in a manner that would …allow her to maintain an adequate schedule or go to work daily." (*Id.*)

By way of example, Plaintiff alludes to "aforementioned…counseling records [that] indicate she missed appointments because she was exhausted from her

symptoms that prevented her from sleeping." The allusion appears to be to a note dated January 10, 2017, in which Plaintiff reported canceling one appointment due to increased symptoms and poor sleep, and a second record dated February 7, 2017 in which she reported "struggl[ing]" to make appointments. (Tr. 1137, 1141). The ALJ specifically discussed this issue, (Tr. 25), which was short-lived and related to side effects from a change in Plaintiff's medications By February 26, 2017, she reported "improved mood and sleep since starting new medications." (Tr. 1136). In contrast to the modest evidence of one or two canceled appointments stands not only the records specifically cited by the ALJ (Dr. Sexton's consultative exam and records of improvement), but also the fact that she was able to find and move into a new apartment in the spring of 2017. (Tr. 1135).

Additionally, the ALJ reasonably relied upon Plaintiff's daily activities. (Tr. 28). She lives alone in her apartment, drives, attends church occasionally, attends medical appointments, shops for groceries, and visits the library. (Tr. 20, 28, 48, 56-57, 60, 284-285, 1034-35). She attended an organizational skill seminar at the library, where she also reported attending "craft days." (Tr. 1187). In March 2016, she began working part-time 4 hours in the evening, five days per week. (Tr. 1181). Although she also reported increased fatigue and disordered eating from her new routine, she was able to complete and manage that short-term employment. (Tr. 24; Tr. 1168). Her various reports in the record that she was actively looking for work, even "low stress" positions, undermine her claim that she is incapable of any work. (*Id.*)

Plaintiff also argues that the ALJ did not adequately account for her social limitations, citing her treating psychiatrist's opinions that she has such "extreme"

6

limitations that "she is unable to work with the public." (Tr. 1203).  Notably, however, the ALJ specifically restricted Plaintiff to "no interaction with the public."  (Tr. 20).

Citing the vocational expert's responses to two hypothetical questions in which Plaintiff's counsel inquired if Plaintiff could sustain work if she required "special supervision" or was unable to accept instruction or criticism from supervisors" 20 percent of the workday, Plaintiff argues that her mental limitations are work-preclusive.  (Tr. 72-73).   Although Plaintiff maintains those hypotheticals are supported by agency consulting opinions, the record does not contain the precise restrictions articulated by counsel.  (*See* Tr. 120-121).  *Accord Lipanye v. Com'r*, 2020 WL 468418 (6th Cir. Jan. 29, 2020) (affirming denial of disability based upon VE testimony that OCD behaviors that caused claimant to be "off task" more than 10% of the day would be work-preclusive, because ALJ did not find that limitation).  The checklist of questions and responses on which Plaintiff generally relies, in which agency consultants assessed a variety of "moderate" limitations, are prefaced with language that explains that the checklist is intended to provide guidance, but that the narrative discussion in the explanatory boxes following each category contains the RFC opinions. (Tr. 119-21, 134-36).  Contrary to Plaintiff's argument, the agency consultants all opined that none of Plaintiff's limitations were work-preclusive or disabling.  (Tr. 123, 138).

**2. No Error in Assessment of Opinion Evidence**

In her second assertion of error, Plaintiff argues that the ALJ erred by giving "significant weight" to Dr. Sexton's August 2015 opinions while giving only "some weight" to the opinions of her treating psychiatrist at Greater Cincinnati Behavioral Health Services ("GCBHS"), Dr. Skale.  Dr. Skale opined in April 2017 that Plaintiff has "marked" limitations in activities of daily living and in maintaining concentration,

7

persistence and pace, as well as "extreme" limitations in maintaining social functioning, with at least three episodes of decompensation within a twelve-month period, each of at least two weeks duration. (Tr. 1200-1203). Dr. Skale's opinions concerning the "paragraph B" criteria easily satisfy Listing level severity for multiple mental impairments and, if accepted, would have entitled Plaintiff to a presumption of disability. Dr. Skale also opined that Plaintiff was unable to function independently outside her home, would be absent from work more than four (4) days per month, and was unable to complete tasks in a reasonable amount of time. (Tr. 1204-05). The latter opinions would be work-preclusive.

Although Plaintiff does not claim that her impairments meet or equal Listing level severity in this judicial appeal, she does argue that the ALJ should have given greater weight to Dr. Skale's opinions in formulating her mental RFC. Plaintiff is critical of the ALJ's decision to give greater weight to Dr. Sexton's opinions than to Dr. Skale's opinions, arguing that the ALJ's reasoning was "irrational" because Dr. Skale was a treating physician who offered her opinions later in time. (Doc. 11 at 14).

A long-standing regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). For claims filed before March 27, 2017, the treating physician rule[2] requires "the ALJ to generally give

---

[2] Effective March 27, 2017, many regulations have been significantly revised or rescinded. However, the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See*

8

greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009). The reasoning behind the rule has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir.2004) (quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996). When an ALJ does not give controlling weight to the medical opinion of a treating physician, the Commissioner is required to provide "good reasons" for that decision. *Id.* The ALJ must explain the amount of weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c). However, while an ALJ is required to provide "good reasons" for the weight given to the treating source's opinion, the ALJ is not required to provide "an exhaustive factor-by-factor analysis." *Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

---

Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Thus the "treating physician rule" and related SSRs and case law continue to apply to Plaintiff's claim. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

I find no reversible error in the ALJ's analysis in this case, including his decision to give only "some weight" to the opinions of Plaintiff's psychiatrist. The ALJ acknowledged Dr. Skale's status as a treating source, but pointed out that her contact with Plaintiff was "limited" based upon her statement in April 2017 that she had seen Plaintiff only "about every 2-3 months for 1 year." (Tr. 1200; Tr. 25). The ALJ reasoned that the referenced treatment period did not provide Dr. Skale with the extensive longitudinal evidence available to the ALJ, dating back to Plaintiff's alleged onset date in 2013 and continuing through the date of the 2017 hearing. (Tr. 28). The ALJ further criticized Dr. Skale's assessment as relating to "nothing more than behaviors observable during discrete clinical encounters" that stood in contrast to "[t]he record as a whole [which] supports a finding of lesser mental limitations." (Tr. 28).

Though somewhat poorly articulated,[3] the ALJ's analysis is sufficient to satisfy the "good reasons" standard and does not provide grounds for remand on the record presented. Based upon the applicable regulation, an ALJ is not required to give controlling weight to the opinion of a treating physician if it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole. Here, the ALJ clearly discounted Dr. Skale's opinions as inconsistent with "the record as a whole." Throughout his opinion, the ALJ repeatedly and quite extensively pointed out records that showed that Plaintiff was able to drive to appointments, search for a new apartment and move, go to the library, and participate in other activities - in contrast to Dr. Skale's opinion that she had a "complete inability to function independently outside the area of

---

[3]The undersigned agrees with Plaintiff that discounting a psychiatrist or psychologist's assessment *solely* because the assessment is based upon Behaviors observable during…clinical encounters" would be inappropriate. Here, however, the ALJ also cited the relatively short treatment history with Dr. Skale and provided an extensive analysis of Plaintiff's longitudinal treatment records. Those records did not support the more extreme limitations offered by Dr. Skale.

10

one's home." (Tr. 1204). While Plaintiff argues briefly that Dr. Skale would have had "access to" records from others who made up Plaintiff's "team" of providers at GCBHS, many of those records reflected improvement and contradicted Dr. Skale's opinions.

Dr. Skale's opinion that Plaintiff has had three or more episodes of decompensation lasting at least two weeks in duration also was contradicted by the ALJ's longitudinal analysis of the records. The ALJ noted the lack of mental health treatment prior to 2014, and that at the time of Dr. Sexton's August 2015 report, Plaintiff had never been hospitalized for either evaluation or treatment of her psychiatric problems. (Tr. 22). Plaintiff had not been hospitalized for mental health symptoms at the time of Dr. Skale's assessment either, and there appears to be no support for her opinion that Plaintiff had suffered so many extended episodes of decompensation in the year during which she had treated Plaintiff.

The only admission for psychiatric symptoms in Plaintiff's records appears to have occurred roughly a month after Dr. Skale's mental RFC assessment, during a brief period when Plaintiff had lost her access to outpatient treatment. On May 26, 2017, Plaintiff was admitted for worsening depression after reporting that she had been unable to continue treatment with Dr. Skale and other providers at GCBHS due to her move. After being discharged to her apartment in stable condition, she re-established outpatient treatment with A Ray of Hope Counseling and Health Services on June 12, 2017. At that time her mental status was within normal limits except for mild insomnia. By July 12, 2017, Solutions Community Counseling noted that she had been able to get out and drive again, and follow-up notes reported her ability to attend church and feelings of improvement. Her providers there diagnosed moderate to severe symptoms

11

of anxiety and improving depression, with no worsening of PTSD, OCD or insomnia. (Tr. 26).

In sum, based upon the analysis of Plaintiff's mental health records by the ALJ throughout the entire disability period, the undersigned finds substantial evidence to support his decision to give Dr. Skale's opinions only "some weight" in formulating Plaintiff's RFC. And, as previously noted, the ALJ included one of the specific limitations assessed by Dr. Skale that was not found by any other provider: that Plaintiff be restricted to "no interaction with the public." (Tr. 20).

For similar reasons, the undersigned finds no reversible error in the ALJ's decision to give Dr. Sexton's RFC opinions the most weight among the various sources. Despite a regulatory structure that generally requires ALJs to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians," see Blakley v. Com'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009), "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." Id., 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). Although Plaintiff did engage in a significant amount of mental health treatment following Dr. Sexton's examination in August 2015, the ALJ acknowledged and thoroughly discussed those treatment records.

It is not the province of this Court to reweigh the evidence. Here, the undersigned's review confirms that substantial evidence supports the ALJ's evaluation of opinion evidence, as well as the ultimate non-disability determination.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| AMANDA ROSE HONEYCUTT, | Case No. 1:18-cv-762 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).